All right, here, here, here, This Honorable Court of the 2nd District is back in session, Pursuant to adjournment, the Honorable Robert J. Burke is out. Please be seated. Your Honor, it's the second case in the morning, Call 213-989, Policemen's Benevolent Labor Committee versus Pat S.P. Perez, Sheriff of Kane County, et al. On behalf of the FLR, Mr. Daniel Dykstra, On behalf of Sheriff Perez and his legal team, Thank you. Mr. Dykstra, you may proceed. Thank you and good morning, Justices. May it please the Court. This matter revolves around two separate and distinct bargaining units and collective bargaining agreements and two separate grievances filed under the two separate collective bargaining agreements. I will refer to them as the Deputy Collective Bargaining Agreement that covers deputized peace officers and deputized peace officer sergeants, which the Deputy Agreements was filed under, and the Corrections Collective Bargaining Agreement, which covers correction officers and correction officer sergeants, and the Corrections Grievance, which was filed under that contract. At issue in this dispute is whether the Corrections Grievance is part of the Doctrine of Race Judicata under an award that resolved the Deputy Grievance that was filed in June of 2011. Was it the same lawyer representing both of these, you know, the deputies and the corrections individuals? Well, the same attorney. An attorney represented the deputy unit at the Deputy Grievance hearing. He also conducts bargaining for both units. I have handled this Corrections Grievance for some time. I believe he handled it initially as well. In the trial court? He appeared in the trial court, correct? No, he did not. I appeared in the trial court. Did he compel arbitration? No, sir, that was me. He appeared at the arbitration? He appeared at the arbitration for the Deputy Grievance. And did he also appear for the Corrections Officer's Grievance? There has been no arbitration yet. That's what we are hoping to achieve today. During the settlement discussion involving the deputy, was it Krawchuk? Yes, sir. And the learning and at the hearing, during discussions and at the hearing, was it represented, quote, the parties also discussed that there are two different separate CBAs. If for some reason this award conflicts with something, something which I can't imagine in the corrections CBA, then this will be done as a non-presidential award. That's accurate, correct? I believe that's accurate and that's in the record, yes. Did O'Neill hold himself out as representing both entities? I'm not aware I was not at. I mean, as far as the record reflects, That's what he said. That's what he said. I was not at the arbitration hearing, so I don't know specifically, but I would refer you to the record. And the motion to clarify, the arbitrators certainly thought that he represented both bargaining units. I would say that's an accurate reading of the arbitrators. So, I mean, looking at this from the sheriff's perspective, how is the sheriff supposed to bargain with your union? I mean, you have somebody come in on one grievance and then they reach an agreement and then the same union comes back that represents both bargaining units and files a grievance against the sheriff. I mean, how does the sheriff bargain? Why would the sheriff ever sit down with you guys and bargain when basically one hand doesn't know what the other hand is doing or playing both sides against the middle? I don't know how to describe it, but it just doesn't sound too fair to me. Well, when the sheriff bargains the collective bargaining agreements, he sits down with the representative and the executive board or the bargaining team of the deputies unit and they bargain the deputies contract and everybody at the table understands that they are bargaining that one agreement. Similarly, when they bargain the corrections agreement, the exclusive representative from our office will sit down with the corrections. I understand. Yeah, I'm talking about this agreement at the arbitration hearing. I mean, it resulted in an arbitration award, but it was by agreement. Yes. I'm talking about that agreement. When the sheriff sits down to bargain this grievance issue and then the sheriff says, okay, I'll resolve it. We'll do this. We'll let them go over there. We'll let them keep the seniority. Then the same union comes back that represents both bargaining units and comes back and says, no, that's wrong, too. We don't like it, so we're going to get another bite of the apple. Well, I don't know if it's another bite of the apple. Who's the party here, I guess? Are you the party? You being the Policeman's Benevolence Association? It is our position that the two parties are the separate collective bargaining units that are both represented by the Policeman's Benevolent Labor Committee as their exclusive representative. As the exclusive representative, it is our name on the motion to compel arbitration and this appeal, but the two separate bargaining units are the parties in these matters. So shouldn't, since you represent both, before negotiating or bargaining away rights that you believe the correction officers may have, wouldn't it be prudent to bring them to the table and say, hey, this is what we're going to do with this guy who's a police officer and then represent the police officer or the corrections people on whatever their joint agreement would be? Yes, that would have been prudent, too. At the hearing for the deputy grievance where leadership of the deputy unit as well as the grievant were present, when they had, as I understand, lengthy discussions to settle that grievance that took several hours, if not all day, they should have at some point considered that this may affect the corrections unit. They did. On the representations of Mr. O'Neill, he said, I represent both units. Was he misrepresenting the law or the facts? Was he, in fact, an attorney for that unit? He is, but I don't believe that arbitration award can bind the corrections unit. I think the arbitration award arises specifically out of that deputy contract. It can bind that contract and the parties to that contract. It cannot bind parties to a separate contract and alter that contract. Would you agree that a lawyer's statement at a proceeding who represents a party is binding on that party? Yes. What happens here, then, if you get your arbitration and another arbitrator says that this violates the CBA, this first arbitration award violates the CBA. Now you have two valid, totally diametrically opposed arbitration awards. What happens then? Where does Mr. Krawcheck go? Does he just sit in the middle? Does he get a seniority? What happens? I don't know the answer to that. I think there would probably be future disputes in the courts to resolve that, probably initiated by Mr. Krawcheck to enforce the deputy award where he would get his full seniority. So we're creating more litigation because Mr. O'Neill said, if this happens to violate the CBA, we're just going to treat it as a non-presidential order. Yes, I think that's accurate. You know, this arbitration award, the first one with the deputy grievance, it doesn't affect the entire corrections bargaining unit. It affects a number of them in general and a few of them specifically. I believe with his full seniority, Mr. Krawcheck arrived in the bargaining unit of somewhere in the neighborhood of 100 employees, approximately halfway up or further up the seniority ladder. Specifically, this affects the shift bid procedure. He would get an earlier bid in the shift bid, which would affect— Over the people who are now below. Over the persons who are now below. That's what I'm getting at. You've got 50 people who are above him that aren't affected at all by this arbitration award. That's correct. And 50 people below, which seems to maybe play into the Stahulik case, where maybe the 50 people below would each have a basis to set aside that arbitration award on the basis that your union didn't effectively represent them. Yes, I think that's what I explained in my brief. I don't think that is necessarily an economic way to pursue this and achieve a just result. I don't know that they would have—I haven't done the research. I don't know if they could file a class action suit or if they would have to file 50 individual suits to all get above Officer Krawcheck in seniority. But either way, that would be their way to attack this first valid arbitration award, as opposed to filing a grievance that now would then potentially result in two competing awards and then all of us gather back here again a year or two from now to figure this one out. I think there's still some factual distinctions between Stahulik and the scenario you've proposed in that Stahulik was challenging his own collective barring agreement decision. He was an employee under the FIRE collective barring agreement. An award was issued specifically concerning him under his agreement, which he disliked because he was reinstated as a probationary employee and again fired at will as a probationary employee. What about the issue of timeliness also? The CBA agreement states a grievance must be raised within 10 days of the occurrence giving rise to the complaint. I think I summed up the authority on that in my reply brief. It is not for the court to determine the timeliness. That is for the arbitrator to determine. And even if you do believe that it is in the court's jurisdiction to make that determination, I think it should be remanded to the trial court for a factual. We can affirm for any basis in the record, correct? That's correct. I think if you do determine that timeliness is an issue, we should be remanded to the trial court to determine when the union had knowledge of the grievance and whether it was, in fact, timely filed or untimely filed. I don't believe there are sufficient facts on the record to make that determination at this point. Is the correctional's grievance a collateral attack on the first arbitration award? No, I don't believe so. I think it is the appropriate method to try and resolve what they consider a violation of the corrections collective barring agreement. The corrections agreement has a grievance procedure that ultimately results in arbitration. Section 16 of the Public Labor Relations Act says that you must exhaust your nonjudicial remedies before you can attempt to resolve these issues through court. We have exhausted our nonjudicial remedies to this point. If we are denied in court today, I believe we may at that point be able to file a motion to vacate, and there will be, I'm sure, plenty of disputes about the timeliness of that. Should we reach that point? But I think the appropriate action for the corrections unit was to file a grievance, attempt to resolve this through the grievance arbitration procedure they bargained for and are required to have in their collective bargaining agreement before pursuing judicial remedies. And I think that's what the legislature intended with the Public Labor Relations Act and the scheme they set up regarding grievance arbitration for public collective bargaining agreements. What about the issue of parties? Isn't that your argument that the unit is the party? Yes, that's correct. Isn't that really a matter for the General Assembly? Because under the law, the same union is permitted to represent? That's correct. We also represent the deputy coroners in King County. We represent the jail maintenance workers in King County, the court security employees in King County. Our union represents a number of bargaining units in King County. Shouldn't the General Assembly make it clear if a unit is a party it should be made clear in the act? I think it's clear from the fact that there are two separate agreements that these are two separate parties. If it was appropriate for the policemen's benevolent to represent all of these units, we could just put them under one giant collective bargaining agreement. That would save us time in bargaining for seven or eight different units that we have to come and bargain every specific contract. Even though you're representing both units, theoretically you're not supposed to be bargaining the other unit's rights away in another unit's proceedings, correct? That's correct. Nobody thought of that when this arbitration order was in it? That is, I think, at the heart of this matter. And why is it that you don't think that a motion to vacate the award was filed or would have been the proper way to go? I don't think it would have been the proper way because only a party to the contract and the arbitration award can file a motion to vacate under the Uniform Arbitration Act. But if you feel that the award was in contradiction with the corrections officers, wouldn't you have standing to bring that motion? I think only the deputy unit would have had standing to file a motion to vacate. It would have been filed under the name Policeman's Benevolent Labor Committee on behalf of the deputy's unit. Well, why would they appeal it? They would not. They were perfectly satisfied, and that's why a motion to vacate was not filed. And it was represented. Obviously, the hearing officer and both parties present said, and Mr. O'Neill said, I represent both, and if there's a problem, it'll be treated as a non-presidential award. He did say that. And it's your argument that an individual in the deputy's bargaining unit, if that individual somehow was put at a disadvantage based upon disorder, that person would have been able to individually under Strahulic file a motion to vacate the arbitration award? If they also alleged a breach of the duty of fair representation, yes. But the distinction you're drawing is because this is a different, similar to this Meridian case, it's just... Correct. This is a separate bargaining unit that covers separate employees. They were not a party to the deputy agreement, which means they were not a party to the arbitration award that arose out of and interpreted that agreement, and so they could not have challenged that award through a motion to vacate. But it's all through the Illinois Public Waiver Relations Act. The motion to vacate would be through the Uniform Arbitration Act, or the Illinois Uniform Arbitration Act. But, I mean, the deputies as well as the corrections are all under the Illinois Public Labor Relations Act. That is correct. They are all, they have all been deemed appropriate bargaining units by the Labor Relations Board. They have elected the Policeman's Benevolent Labor Committee as their exclusive representative, and we bargain and administer their contracts both separately. I think one issue we haven't touched on is the issue of whether this is the same cause of action. If you determine they're the same parties, I believe it's still not barred because they are not the same cause of action. I think the corrections grievance could not have happened without the deputies' grievance. The deputy grievance is a necessary precedent to the corrections grievance. Had they not filed that grievance and reached that award, Deputy Krawcheck would not have been instated into the corrections unit with his full seniority and would not have caused a grievance to be filed by the corrections unit. So I don't think it's the same cause of action, even if they are the same parties. But aren't they so intertwined, as you just set out? The issue of Krawcheck's seniority was, in fact, decided in that arbitration. That issue was decided. I realize it started out with him being fired, and then the agreement resulted in him not being fired. So when you're looking at this, how did it start out, it was whether he was going to be fired or not. But ultimately, when we're talking about race to economy, we're talking about issues that were actually decided. And that issue of his seniority in that first arbitration proceeding was actually decided. It was decided that he would have full seniority in the corrections bureau. It was included in the agreed award, yes. And arbitration awards are binding. Yes, they are binding on the parties to the arbitration award. And you're saying that that was an arbitration award for the deputies, not the corrections people. If I may be allowed to continue, yes, the deputy agreement between the deputies and the county and the sheriff can bind those parties specifically in an arbitration award in regards to that agreement. It cannot alter, change, amend, make any difference, or have any interpretation of the corrections agreements which specifically governs the seniority of corrections employees. Wouldn't the sheriff Perez have said, no way, we're not doing this. If he had known that the corrections unit was going to file agreements, he would never have gone along with it, would he? I imagine he would have liked to avoid this dispute. And he was relying upon a representation of that unit's lawyer. I believe that is accurate from the record. Thank you, counsel. You have time for rebuttal. Ms. Hansen, you may proceed. May I please have a word? Yes. Thank you, counsel. What has happened here is the union has attempted to use the grievance procedure to attack a binding arbitration award. It is the sheriff's office position that there is identity of parties in this particular case because of the representations that Tim O'Neill made at the arbitration. He did, in fact, represent both the corrections unit and the deputies unit at that time. And when he went to the arbitration, as the court recited, he made the representation that he represented both of those units. Should there be anything conflicting with the corrections bargaining agreement, this would be done as a non-presidential matter. Both the arbitrator and the sheriff's office detrimentally relied on that representation that this would be okay to do. Based on his representations there, it is our position that the corrections unit was, in fact, a party to that arbitration. Furthermore, counsel comments that the causes of action are not the same. And I would point out that case law that he actually provided says that you don't even necessarily need identity of parties. What you need to have is sufficiently similar interests. And in this particular case, we do. Well, don't you have separate interests? I mean, you have the sheriff's deputies and you have corrections people. Even though they're under basically the same umbrella, they are two separate units, aren't they? I do agree with that. In terms of the similar interests, I would argue that it has to do with Deputy Krawcheck's seniority. The first grievance dealt with him obtaining his job back, and he specifically asked to have his seniority. But for that, the second grievance would never have been filed. They specifically want to get rid of Deputy Krawcheck's seniority. So the main issue that it comes down to, and this is why there are similar interests between the two, is whether or not he gets to keep the seniority that was decided in the prior arbitration. That arbitration award is binding on the parties. But were they a party to the arbitration? Were the corrections officers a party? I believe that they were at the arbitration because of their lawyer's representation that he made there. Now, because of the fact that that specific issue of whether or not transferring the seniority would conflict with the corrections collective bargaining agreement, that issue was actually addressed at the arbitration. And res judicata says that any issues that are decided or ones that could have been decided are barred from being re-litigated or, in this case, re-arbitrated, which is what it appears the union is trying to do in this case. You've argued that the corrections were bound by the attorney's statement, which I understand that, but you're also arguing that the Corrections Bureau and the Deputy's Bureau, in this instance, have similar interests. But aren't their interests opposed? I mean, the Corrections Bureau's interests are not to have this guy jump over a bunch of people and seniority. Correct, but I do believe that they fall under, if you consider their two different actions, they come from the same core of imperative facts. They come from the same transaction or occurrence. They both revolve around whether or not Deputy Krawcheck keeps his seniority. I understand they both want different things, but they both are concerned with whether or not he actually keeps his seniority in this particular instance. Let's assume for a second that O'Neill didn't make the statement that I represent these people. Maybe he said, hey, I'm only here for the deputies. You wouldn't be standing here separate apart from that statement. I mean, if we didn't have that statement, you wouldn't be arguing that their interests were the same, would you? No, I don't believe there would be a seniority issue. We would have had a completely different arbitration agreement had he not made that statement. The only reason that that agreement— I'm just trying to get at this similar interest issue because it seems to me, again, apart— I understand the statement of O'Neill, and I understand how you're relying on that, but apart from that, these people's interests, they weren't at the table. If O'Neill didn't represent them, they weren't at the table. They made corrections. Their interests are opposed. They don't want this thing to go through. Correct, but unfortunately, Mr. O'Neill, and we brought their interests into this, they are concerned about their collective bargaining agreement now and whether or not it's been violated, and their own lawyer, who is supposed to represent them, represented at this arbitration that this would be okay to do, and if it wasn't, well, it would be non-presidential, which leads into the argument that really the proper remedy here would have been to file a motion to vacate. They're essentially attacking what happened at the arbitration, that they're not happy with the seniority, so they want to get rid of it. What they should have done was not file a grievance. There should have been a motion to vacate. Well, if they're bound by their attorney's agreement, then they're a party to this arbitration. So then what you're saying is the individuals under Spruhlick who are bound by this, who are parties to this, would then be able to individually file this action? Correct, exactly. There are certain members that arguably appear to be upset with this, and it wouldn't be proper for them to have no recourse. This would be the proper way for them to deal with it. It was never a position— File a motion to vacate. Correct. And you're submitting then they have standing to file that motion? I believe they do in two different ways. One, I believe that because Mr. O'Neill made them a party to it, they would have had standing to vacate it based on that. However, I also believe they could have done that under the Spruhlick case, arguing that the union breached its duty of fair representation. If Mr. O'Neill did not, in fact, have the authority to go to the arbitration and make that agreement, then he, in fact, acted in bad faith, and that's really an issue between the union members and the union, not the union members and the employer, the sheriff's office. It's also an issue between the union and the attorneys that they select to represent them. Correct. Ethically, should the same attorney be representing separate units that have conflicting interests? I believe that there was a conflict that arose, and unfortunately, both the employer and the arbitrator relied detrimentally on what Mr. O'Neill said without knowing that this was going to become an issue. Obviously, had they known, this agreement would not have been breached because we would not want to have another grievance filed and then face the potential of if we go to arbitration on corrections and they say, well, Deputy Krawcheck can't have any of his seniority, then we're going to have an issue of we're the employer. Who do we follow? What do we do? How often, if you know, apparently this gentleman has been representing both corrections as well as deputies for some time. Apparently, this is a conflict that doesn't generally arise. I cannot say whether or not I was not involved in this. I do not know if it has arisen in the past. I do know that he represents the other units within the sheriff's office. Well, based upon his representation, and I'm assuming he's an honest, ethical attorney, from his representation, it appears that he consulted with the corrections unit because he made that representation. If a problem occurs, it will be treated as non-precedential. And that was our position that we relied on it, that, well, he must have spoken with the corrections. This must have been okay. So after this is agreed to, then there is a grievance filed. And clearly, I cannot say what happened. I am not part of the union. I am not Mr. O'Neill. I do not know what happened after Deputy Krawcheck went back to the corrections unit. It appears that some people were unhappy about it. Some, not all. I can't speculate, but it appears that some people think, yes. But had we known that at the time, this agreement would not have happened. We were under the impression, based on his representation, that this is something he had authority to do. We did that. It is clear now that he must not have had authority, which is why it is our position that he was not representing both units. He apparently has a conflict, which is why the members that are affected by this in the corrections unit could file a motion to vacate, saying that he did not fairly represent both sides. Could they do that now? Wouldn't it be untimely? I know under the statute, to file a motion to vacate, they only have 90 days. They could have done this then. That is past the 90 days. I will say that I do not know if they are going to file something and say that somebody acted in bad faith. If that has the same time frame, I do not know that. But generally, under the statute, it's 90 days. However, they could have done this. Strahulic was a common law case, was it not? Correct. Theoretically, under Strahulic, as long as they are within whatever applicable statute of limitations. Then they could potentially do that. And I understand counsel saying that it would not be economic for them to do that. Well, unfortunately, we're in a tough situation where how do we fix what happened? This should have been what they had done, and they didn't. They decided to use the grievance procedure, which in our third argument is that this isn't even an arbitrable issue because it's barred. Our particular collective bargaining agreement specifically says grievances not raised or appealed within the designated time limits will be barred. And it's very clear from everything that was submitted that it was over a month before corrections even filed this grievance. Deputy Krawcheck went back on December 12th of 2011. The arbitration was on the 8th. They knew when he came back, and they waited until January 19th. It's very clear that this is barred, so that is the third reason that the employer is arguing that this should really not go to arbitration. You agree, then, that when we're talking about parties and who are the parties here, we do look at the separate bargaining units to see whether they're parties. They do fall under the umbrella of the Policeman's Benevolent Labor Committee. There have been different groups that have been certified, and they each have individual contracts. But again, when we're talking about Gray's Judicata and we're talking about whether the same party was involved in the first arbitration and the second grievance, that we look at the different units to see whether they're the same parties or not. In this particular case, it's unique. I believe part of the issue is that Mr. O'Neill, at the arbitration, brought in the corrections unit by making that representation and essentially affecting their— Because they would be if they were an affected party by the agreement. That's right. The seniority transfer affected them, so he brought them in. Correct. Their interests became involved. At least some of their interests became involved by that. He brought them in by way of his comment. He didn't have any representative of them sitting at the table, if you will. From what I know of the transcript, I do not believe anybody from there was present. I was not present, but I don't think there's anything in the transcript to indicate that. But he did represent to the arbitrator that he is also their lawyer. And when we filed our motion for clarification in his letter, he very clearly stated that Mr. O'Neill said he was representing both units. And we addressed that there could potentially be an issue in the corrections collective bargaining agreement. But that was decided during the arbitration. That's binding. We can't go back and re-arbitrate the same issue, which is why Restudio kind of bars this. And really, the proper course of action for the union or for the members would have been to file a motion to vacate that arbitration award. And maybe start the whole thing all over and have everybody involved. So based on that, the employer would ask that this court affirm the lower court's ruling. Thank you. Thank you. Mr. Dexter, report of argument. Thank you again, Justices. I think I want to make one distinction to clarify what Mr. O'Neill's representation bound and who was bound by that. I think had the parties gone to the hearing, decided they were going to settle the dispute, and drawn up a written settlement between the parties, Mr. O'Neill's representation would have bound the corrections unit because he would have represented and signed on behalf of the corrections unit and the deputies unit and everybody. Instead, what happened here is an arbitration award was issued that covered the settlement terms the parties had agreed to. Because it is an arbitration award, it can only bind the parties to that award, in this case, the deputy unit and the sheriff. The corrections unit is not a party to that award, not a party to the agreement that gave rise to the award, and cannot be bound by the award. I asked whether Mr. O'Neill did, in fact, represent corrections. He does, in fact, represent them. And you said yes. And he did, in fact. And then Justice Burkett asked, is a party generally bound, not that you can say a party because that's a contention here, but is a client bound by their attorney's comments? So putting those two together, I mean, it kind of plays into your opponent's argument that corrections is bound by O'Neill's comments. Corrections was brought into these proceedings based upon O'Neill's comments. And they relied upon those comments. They relied upon those comments to reach the result that was reached. They being the sheriff and the arbitrator. Well, in that case, I may have misspoke. I don't think they are necessarily bound by his comments made during an arbitration hearing. I think they can be bound by his actions and his words. As I said, had he signed a written settlement agreement and said in the settlement agreement that I represent the corrections unit on this matter and we will not be worried about whatever happens with this agreement, then it would have bound the corrections unit and they would have had a breach of fair duty claim against Mr. O'Neill. So the fact that he said that and they went to arbitration hearing, we can't rely on that. But had he said that and signed an agreement, then we could rely on it. I think that's probably accurate. I don't know for certain, not having researched that fully, but I think that's probably accurate. You're just running out there. Yes, I'm trying to distinguish the effect of the arbitration award versus something Mr. O'Neill probably could have done that would have resulted in a decision in favor of the athletes. There was a motion for clarification. Yes. And the arbitrator made clear that representation was made and the agreement is binding, correct? That is correct. I mean, after that, if that was in anchor, why not file a motion to vacate the arbitration award? I believe any party who had standing to file a motion to vacate had no interest and no desire to file a motion to vacate. So you're saying that what he said, that he represented basically that there's not going to be a problem, I represent them. We can't take that for anything because it wasn't during an agreement, it was during an arbitration hearing. Then back up an hour and you say, well, they didn't have standing because they weren't part of it. So had he said that during an agreement, then they would have been a party to be able to come in and file a motion to vacate. I think they would have been bothered. I think it would have probably been bad action by their attorney had that been in the course things went down. Since it's not, I don't think the arbitration award can bind the corrections unit that is not a party to the agreement. I think the arbitrator should have known that as a person who always receives their authority to make any decision from the contract they are interpreting. But the arbitrator relied upon what Mr. O'Neill said. I think both of the attorneys present at the hearing should have known the same thing. And I don't know if Mr. O'Neill represented that he had consulted with corrections. I don't know if he didn't represent. Based on the reading of the transcript, it was a last second thing that came up and he off the cuff said, I believe they discussed there were a number of issues to resolve like sick and vacation time to be refunded to Deputy Krawcheck. This was, as I understand, based on the reading of the transcript. I can't say for certain another one of those issues that they had to resolve. And Mr. O'Neill said off the cuff that, well, I don't imagine. He did say I don't imagine there will be any problem, but if there is one, we'll make it non-presidential. I don't think the parties anticipated there would be any conflict between the agreement and the corrections unit. If they had, they probably would have consulted with the corrections unit. Isn't the lawyer for the unit, isn't he supposed to resolve the issues? And he represented that he anticipated resolving any issues, and this is the way it would be handled. He did represent that. I think similarly, if he had represented while bargaining the deputy agreement that, hey, the corrections will take a wage freeze for the next four years, I don't think the county would expect that. That's a little ridiculous. I mean, a wage freeze for four years versus this little seniority issue. Well, this was an issue that the parties at the arbitration hearing did not think would be a problem for the corrections unit. It turns out it was. Is there a conflict of interest for the same lawyer to be representing multiple units? I don't believe there is. I think the conflict in this case is between Deputy Krawcheck after he was reinstated and the corrections unit. I don't think there was an inherent conflict between the deputy unit and the corrections unit. So O'Neill could wear both hats at that arbitration proceeding? I think he could wear both hats. I don't think he has any authority to wear the corrections hat in an arbitration proceeding for the deputy collective bargaining agreement. I think he only has the authority to represent the party to that agreement being the deputy. But he represents an affected party by the agreement. He represents that unit that, in retrospect, is now affected. Yes, I think, again, this is the distinction I began my rebuttal with. Had it been a settlement agreement versus an arbitration award, I think that's an important distinction. The arbitration award can only interpret the contract that gave rise to that arbitration and cannot bind parties that are not party to the contract. Regardless of what the lawyer said? Regardless of what the lawyer said, yes. How fair is that to the show? All right. We'd like to thank all the attorneys for their arguments. The case will be taken under advisement, and we are adjourned.